## RAUB *v.* CARPENTER.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 64.   Argued November 3, 4, 1902—Decided December 1, 1902.

At a special term for orphans' court business the Supreme Court of the District of Columbia admitted a will and codicil to probate, to which the plaintiffs in error (caveators below) filed their caveat; issues as to mental capacity, fraud, coercion and undue influence were framed for trial by jury; on the trial a witness, who was a physician and a relative of deceased, after testifying in regard to certain facts as to health, actions of deceased, cause of death and results of an autopsy, was asked, " Doctor, have you formed any opinion from your uncle's general condition of health and the conditions disclosed by his brain at this investigation, *and from all you know about him yourself*, what his condition of mind was ? "  The trial court sustained the objection taken by the caveators to the words in italics on the ground that no sufficient basis had been laid for that portion of the evidence, and that the facts relied upon in this particular should be first adduced.  *Held*, that the exclusion was not error.

After the decree caveators moved to vacate on the ground that one of the jurors was incompetent *propter delictum* for service, but the trial court denied the motion, the record stating that the court was of the opinion that at the trial there was no evidence of mental incompetency, fraud or undue influence.  *Held*, that the verdict and judgment were not absolutely void, and that it was within the discretion of the trial court to grant or deny the motion, and as no other verdict could have been rendered consistently with the facts, the presence of the juror objected to could not have operated to the prejudice of the plaintiffs in error, and as there was nothing to show that injustice was done to them, the trial court did not abuse its discretion.

*Wassum* v. *Feeney*, 121 Massachusetts, 93, cited in *Kohl* v. *Lehlback*, 160 U. S. 293, 301, followed and *Garrett* v. *Weinberg*, 54 S. C. 127, distinguished.

THE case is stated in the opinion of the court.

*Mr. Charles Poe* and *Mr. Victor H. Wallace* for plaintiffs in error.

*Mr. Joseph A. Burkhart* and *Mr. J. J. Darlington* for defendant in error.

Mr. Chief Justice Fuller delivered the opinion of the court.

This is a writ of error to a judgment of the Court of Appeals of the District of Columbia, affirming certain orders of the Supreme Court of the District, holding a special term for orphans' court business, admitting a will and codicil to probate and granting letters testamentary thereon ; and denying a motion to vacate that decree.

Plaintiffs in error filed a caveat to the probate and record of the writings purporting to be the will and codicil, and issues, addressed to both, as to mental capacity, fraud or coercion, and undue influence, were framed for trial by jury.

Trial was had, and on the conclusion of the evidence the court, at the request of the caveatees, instructed the jury that there was no evidence tending to show fraud, undue influence or coercion, and that on these issues the jury should render its verdict for the caveatees. To which the caveators made no objection, and preserved no exception. Three instructions in respect of the mental capacity of the deceased to make a valid will or codicil were given on behalf of the caveators as requested by them.

The jury returned a verdict June 15, 1900, in favor of the caveatees. No motion for a new trial was made within four days as required by rule 53 of the court, or prior to June 26, when the court entered an order and decree admitting the will and codicil to probate, and granting letters testamentary thereon, from which an appeal was taken to the Court of Appeals.

Several exceptions were preserved to the rulings of the court in the progress of the trial, which were disposed of by the Court of Appeals satisfactorily as we think. But one of them has been pressed on our attention.

Dr. George B. Heinecke, a practicing physician in Washington, and a grandnephew of deceased, testified that he had known deceased ever since he could recollect, and was accustomed to seeing him frequently ; that he had seen him when recovering from attacks of epilepsy subsequently to the execution of the will and codicil ; " that testator had stated to him that he was

a sufferer from urethal calculus; that on the 13th of March, 1896, he had seen the testator have a fainting spell;" "that he had on one occasion seen testator laughing to himself; that on or about the 13th of February, 1899, during the blizzard, the testator acted peculiarly about the snow in his yard; did not know how it got in there, all of it, and went out there and tried to get it removed;" and witness stated the result of the autopsy and the cause of death. He was then asked the following question: "Doctor, have you formed any opinion, from your uncle's general condition of health and the conditions disclosed by his brain at this investigation, *and from all you know about him yourself*, what his condition of mind was?"

To that portion of the question which called for an opinion from the witness from "all that you know about him yourself," the caveatees objected on the ground that no sufficient basis had been laid for that portion of the question, and that the facts relied upon in this particular should be first adduced. The court sustained the objection and caveators preserved an exception.

We agree with the Court of Appeals that the trial court did not err in holding that portion of the question objectionable, and, if so, the question as framed could not properly have been allowed to be propounded, though caveators were left free to put it with the objectionable words omitted. Clearly the opinion of the witness from facts he did not disclose was inadmissible. If he knew anything about the deceased other than what he had stated, which aided him in arriving at a conclusion, that knowledge should have been developed. In that particular the question assumed the existence of facts for which there was no foundation in the evidence.

So far as the conduct of the trial was concerned we find no reversible error.

On July 16, 1900, twenty days after the decree was entered, caveators moved that that decree be vacated on the ground that one of the jurors was disqualified for service on the jury by the fact that he was under the age of twenty-one years, and by the fact that he had several times been convicted of the crime of petty larceny in the police court of the District. The motion

was supported by transcripts from the records of the police court, and by affidavits, sustaining both disqualifications, the affidavits also showing that at the beginning of the trial term of the court at which they had been summoned, the jurors had all been examined on their *voir dire* by the presiding justice as to their qualifications to serve on the jury; that the juror now charged to be disqualified had then and there falsely answered that he was over the age of twenty-one years, and had never been convicted of crime; that one of the counsel for the caveators was present in court at the time of such examination; and that the falsehood of the statements of the juror in question was not known to the caveators or their counsel until after the entry of the order now sought to be vacated. The motion to vacate was denied, the record stating "the court further being of opinion that at the trial there was no evidence of mental incompetency, fraud, or undue influence."

From this order the caveators took their second appeal.

Viewed as an ordinary motion for a new trial, the motion was not seasonably made under the rules, nor is it contended that the judgment came within the Maryland act of 1787, ch. 9, sec. 6, 2 Kilty; *Spalding* v. *Crawford*, 3 App. D. C. 361, as having been obtained by fraud, deceit, surprise or irregularity in the sense of that statute. But it rests on the power of the court to set aside a judgment at the term at which it is rendered under circumstances calling for the exercise of its discretion in that regard, or on the assumption that the trial and verdict were absolutely void because of the incompetency of the juror.

By section 872 of the Revised Statutes relating to the District of Columbia, as amended by the act of March 1, 1889, 25 Stat. 749, it is provided: "No person shall be competent to act as a juror unless he be a citizen of the United States, a resident of the District of Columbia, over twenty-one and under sixty-five years of age, and a good and lawful man, who has never been convicted of a felony or misdemeanor involving moral turpitude."

Treating the application as open to consideration by reason of the discovery of the existence of the alleged objection after

verdict and judgment, but as amounting to no more than a motion for new trial made in apt time, it was within the discretion of the trial court to grant or deny it, and the Court of Appeals held that the order denying it was not appealable. But the court also held that the discretion of the trial court was properly exercised; that there was not only no evidence in support of the charges of " fraud, undue influence, circumvention, or coercion," which was conceded, but that " the charge of mental unsoundness is wholly unsustained and without any support whatever in the testimony;" and that the trial court would have been fully justified in peremptorily directing a verdict on this issue as well as on the others, as that court in the order appealed from intimated it would have done if requested. In short, the two courts agreed that the facts were with the caveatees, and, unless clearly erroneous, which does not appear, we should accept their finding. *Towson* v. *Moore*, 173 U. S. 17, 25.

And as the verdict was the only verdict that could be rendered consistently with the facts, the presence of this juror in the box could not have operated to the prejudice of plaintiffs in error.

In *Wassum* v. *Feeney*, 121 Massachusetts, 93, the rule that " when a party has had an opportunity of challenge, no disqualification of a juror entitles him to a new trial after verdict," was applied, and it was held that " a verdict will not be set aside because one of the jurors was an infant, where his name was on the list of jurors returned and empaneled, though the losing party did not known of the infancy until after the verdict." And Mr. Justice Gray, then Chief Justice of Massachusetts, delivering the opinion, cited, among other cases, *Hill* v. *Yates*, 12 East, 229, where the son of a juryman unlawfully served in his father's place, and pointed out that Lord Ellenborough there " said that he had mentioned the case to all the judges, and they were all of opinion that it was a matter within their discretion to grant or refuse a new trial on such a ground; that if no injustice had been done, they would not interfere in this mode."

*Wassum* v. *Feeney* was cited with approval and quoted from in *Kohl* v. *Lehlback*, 160 U. S. 293, 301, as in accordance with the great weight of authority. This case involved the disquali-

fication of alienage, but did not require the determination of the question, "whether, where the defendant is without fault and may have been prejudiced, a new trial may not be granted on such a ground," though it was referred to.

*Garrett* v. *Weinberg*, 54 S. C. 127, is relied on by plaintiffs in error as ruling in a civil case that a new trial should be granted when a disqualified juror sat, the parties or their attorneys not knowing of the disqualification until after verdict. But that was a case of a motion for new trial made in the ordinary way, and the juror was held disqualified under the express provisions of the constitution of the State, which in that respect were held to be mandatory, so that the jury was not a "constitutional jury," but the court did not intimate that the incompetency rendered the verdict and judgment void, and, on the contrary, treated ignorance of the fact until after trial as material.

In *Kohl* v. *Lehlback*, we held that "the disqualification of alienage is cause of challenge *propter defectum*, on account of personal objection, and if, voluntarily, or through negligence, or want of knowledge, such objection fails to be insisted on, the conclusion that the judgment is thereby invalidated is wholly inadmissible. The defect is not fundamental as affecting the substantial rights of the accused, and the verdict is not void for want of power to render it." *Hollingsworth* v. *Duane*, Wall. C. C. 147, was referred to, where the court placed alienage, infancy, infamy, and affinity, in the same category. See *Goad* v. *State*, 106 Tennessee, 175; *State* v. *Powers*, 10 Oregon, 145; where disqualification *propter delictum* was held not to be in itself fatal after verdict.

No reason is perceived why this particular objection could not be waived by the parties, and even where a party by reason of excusable want of knowledge might be entitled to claim that he had not waived it, that would go to the merits on application for new trial, and not to the want of power. The verdict and judgment not being absolutely void, it is unnecessary to pursue the subject further, as there is nothing to show that injustice was done to caveators, and the trial court did not abuse its discretion in the premises.

*Judgment affirmed.*