NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JESSE RICHARD CISNEROS, *Appellant*.

No. 1 CA-CR 17-0182
FILED 6-18-2019

Appeal from the Superior Court in Maricopa County
No.  CR 2015-138997-001
The Honorable Christine E. Mulleneaux, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michelle L. Hogan
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Paul J. Prato
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Kent E. Cattani joined. Presiding Judge Jennifer B. Campbell specially concurred.

---

**M c M U R D I E**, Judge:

**¶1**　　　　Jesse Richard Cisneros appeals his convictions of aggravated assault and possession or use of marijuana and the resulting sentences. Cisneros argues that the superior court committed structural error by denying his motion to strike prospective juror number 48 ("Juror 48") for cause, causing the jury to be tainted by a biased juror. For the following reasons, we affirm Cisneros's convictions and sentences.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　Cisneros was charged with several counts related to an aggravated assault involving a weapon and the subsequent discovery of marijuana in his car. During *voir dire*, Cisneros's counsel asked the following questions related to whether a juror would want to hear "both sides of a story":

> A defendant doesn't have to offer any witnesses. They don't have to offer any exhibits. That's what the law is.
>
> Does anybody, when you think about that, think about, you know, in your everyday life you want to hear both sides of the story, maybe. You think about if you're accused of something, you'd want to tell your side.
>
> That being, maybe being, the case, is there anybody who, when you honestly think about it, would have a hard time in this case if the defense didn't present any evidence? Is there anybody who would want to hear both sides?

**¶3**　　　　After discussion with other jurors on these questions, Juror 48 raised his juror card. The following exchange between Cisneros's counsel and Juror 48 occurred:

[Cisneros's counsel]: 48, what can you tell me about your concern as far as both sides of the story?

[Juror 48]: . . . [I]f the State presented a compelling argument and the defense side did not defend themselves, it would lead me to believe that the defense was guilty.

[Cisneros's counsel]: Even if the Court instructed you that that wasn't the way the law works, that's not how the law operates as far as a defendant, would you still have those feelings a little bit?

[Juror 48]: Right. If the State couldn't present a compelling argument, then that would probably be okay for me, if they didn't actually present a statement.

*       *       *

[Juror 48]: If [the State] did not present a compelling argument of guilt, then I would probably understand why the defendant would not want to speak up. But if the State did present evidence of a crime, I would think that they would want to defend themselves.

[Cisneros's counsel]: Okay. So specifically if the State did present some evidence that a crime occurred and the defense offered no evidence, you'd have a problem? You'd hold that against the defendant?

[Juror 48]: Yes.

¶4            Once questioning ended, the court suggested a list of prospective jurors to be stricken for cause, including Juror 48. The State objected to striking Juror 48, stating:

> What I understood him saying is that if the State proves its case beyond a reasonable doubt, he would convict. If the defense didn't present any evidence, then he would need to convict because that's what the law requires. He would want to hear from the defense, if the State had proven its case, for contrary testimony. But he said that if the State had proven its case, he would hold them to that burden. So I don't think there's anything contrary to what the law says on that juror.

Cisneros's counsel argued that the line of questioning centered on Juror 48's belief that an innocent defendant would present evidence to rebut the State's case. He explained that rather than applying a reasonable doubt standard, Juror 48 would look for "compelling" evidence—a standard that perhaps fell below reasonable doubt. The court denied Cisneros's motion to strike Juror 48.

¶5         After the court struck other prospective jurors for cause, both the prosecution and defense were given six peremptory strikes. Neither side struck Juror 48, and he served on the jury. At trial, the State presented several witnesses in support of its case. Cisneros called only one witness, an investigator employed by Cisneros's counsel. Cisneros did not testify and was only present for two out of the five days of trial.

¶6         The court read final instructions to the jury before it began deliberations. The instructions repeated the presumption of innocence and charged the jury to disregard Cisneros's failure to testify or any failure to supply evidence while considering its finding of guilt or innocence. The court charged the jury to comply with its instructions.

¶7         After deliberation, the jury found Cisneros guilty of aggravated assault and possession or use of marijuana. The defense polled the jury, and each juror confirmed the verdicts. Cisneros timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

¶8         Cisneros argues that the superior court abused its discretion by denying his motion to strike Juror 48 for cause because the juror's *voir dire* answers revealed a bias against a non-testifying defendant. Cisneros's argument fails, however, because neither Juror 48 nor any of the other prospective jurors expressed disagreement with an express statement during *voir dire* that "a defendant in a criminal case has a right not to testify" and that "[t]he exercise of that right cannot be considered by the jury in determining guilt or innocence." Juror 48's subsequent comments that Cisneros challenges on appeal did not expressly state a bias against a non-testifying defendant, and neither the prosecutor nor defense counsel interpreted Juror 48's comments to be directed at whether a defendant chose not to testify. Under the circumstances presented, the superior court reasonably interpreted Juror 48's comments to relate to the need for a defendant to provide some type of rebuttal evidence if the State presents a compelling case against the defendant. The court did not err by accepting

4

the parties' interpretation of Juror 48's comments and by concluding that Cisneros did not establish a basis for striking Juror 48 for cause.

**¶9**        Arizona law provides that cause to excuse a prospective juror exists "[w]hen there is reasonable ground to believe that a juror cannot render a fair and impartial verdict." Ariz. R. Crim. P. 18.4(b) (2016). "The party challenging the juror bears the burden of establishing that the juror could not be fair and impartial." *State v. Hoskins*, 199 Ariz. 127, 139, ¶ 37, (2000), *supplemented on other grounds*, 204 Ariz. 572 (2003); *State v. Trostle*, 191 Ariz. 4, 13 (1997). In assessing a potential juror's fairness and impartiality, the superior court has the best opportunity to observe prospective jurors and thereby judge the credibility of each. *See State v. Lavers,* 168 Ariz. 376, 390 (1991); *State v. Pawley*, 123 Ariz. 387, 389 (App. 1979). For that reason, "we will not set aside the trial court's ruling on a challenge to a juror absent a clear showing that the court abused its discretion." *Lavers*, 168 Ariz. at 390.

**¶10**        "Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula." *United States v. Wood*, 299 U.S. 123, 145–46 (1936). The United States Supreme Court has held that jury selection is "particularly within the province of the trial judge." *Ristaino v. Ross*, 424 U.S. 589, 595 (1976) (quoting *Rideau v. Louisiana*, 373 U.S. 723, 733 (1963) (Clark, J., dissenting)). "Reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality, for that judge's appraisal is ordinarily influenced by a host of factors impossible to capture fully in the record—among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and *apprehension of duty*." *Skilling v. United States*, 561 U.S. 358, 386 (2010) (emphasis added). A court's rulings on for-cause challenges also reflect a recognition that juror testimony on *voir dire* may be "ambiguous and at times contradictory." *Patton v. Yount*, 467 U.S. 1025, 1039 (1984). "[T]he lay persons on the panel may never have been subjected to the type of leading questions and cross-examination tactics that frequently are employed," and therefore, they "cannot be expected invariably to express themselves carefully or even consistently." *Id.* Thus, provided "the juror ultimately assures the court that he or she can be fair and impartial, the juror need not be excused." *State v. Purcell*, 199 Ariz. 319, 323, ¶ 8 (App. 2001); *see also State v. Payne*, 233 Ariz. 484, 499, ¶ 23 (2013).

**¶11**        The superior court did not abuse its discretion by declining to strike Juror 48 for cause. Juror 48's statement that he "would probably

understand why the defendant would not want to speak up" if the State did not present a "compelling argument of guilt" can be reasonably construed as focusing on the strength of the State's case, and whether — as the juror further noted — the defendant "would want to defend themselves" should the State present compelling evidence of guilt. Whether a defendant wants to defend himself does not necessarily implicate a requirement that a defendant testify. Juror 48's acknowledgment that he would be willing to acquit the defendant if the State did not prove its case provided a basis from which the court could conclude the juror would not improperly penalize a defendant for not testifying or presenting a case.

**¶12** Moreover, neither Cisneros's counsel nor the prosecutor considered Juror 48's statement to be focused on a defendant's decision not to testify. The prosecutor paraphrased Juror 48's views as requiring "contrary testimony" — without indicating testimony from the defendant himself — if the State presented a compelling case. Neither Cisneros's counsel nor the court disagreed with that depiction of Juror 48's views. Under these circumstances, the superior court did not abuse its discretion by interpreting Juror 48's statement to be focused on the burden of proof applicable in a criminal case.

**¶13** Nor has Cisneros established that Juror 48 did not understand the burden of proof required for a criminal case. There is not a significant distinction between Juror 48's layman's view of requiring "compelling evidence" versus a legal requirement of being "firmly convinced" of guilt. And the superior court informed the jury of the State's burden of proof and the defendant's presumption of innocence before the exchange between Cisneros's counsel and Juror 48 occurred, stating:

> The law requires that the State prove the defendant guilty beyond a reasonable doubt. The defendant is presumed by law to be innocent. This means that the defendant is not required to prove innocence or to produce any evidence. . . .

> Also, a defendant in a criminal case has a right not to testify at a trial. The exercise of that right cannot be considered by the jury in determining guilt or innocence.

The court then asked if any prospective juror did not understand or agree with those principles of law. Juror 48 did not indicate any misunderstanding or disagreement. After Cisneros's counsel questioned Juror 48, he continued to explore the jurors' perspective on the State's burden, asking:

6

[L]et's say you are only 51 to 60 percent sure that the State's version of events is correct. You think maybe [the crime] happened, but you are not firmly convinced. . . . There's reasonable doubts left. But you still think that what the State is saying happened, might have happened, maybe even probably happened, but not quite to that reasonable doubt level. . . . Is there anybody who would have a problem voting for acquittal because, you know, I think something probably happened; it's not quite proven to me, but I just can't vote for acquittal because I think it probably happened, but no more?

Juror 48 again did not indicate any issue with acquitting a defendant in that scenario. After several other jurors expressed confusion with counsel's questions and phrasing of the State's burden of proof, the court clarified:

Ignore that 51 percent. [Cisneros's counsel is] talking about a civil standard which does not apply to this case. You will be given instructions, if you are part of the jury panel, that beyond a reasonable doubt, the standard is that you are firmly convinced. That's what reasonable doubt is, but you'll be given a definition later. . . . So [Cisneros's counsel's] question is if you believe the State has not met their burden of proof, which is beyond a reasonable doubt, which leaves you firmly convinced of the defendant's guilt, can you find his client not guilty? If you can't follow that instruction, that [is] what he's trying to figure out.

Juror 48 once again did not indicate any issue with following the court's instruction.

¶14 Although Juror 48 may not have answered the *voir dire* questions with lawyerly precision, the superior court decides if a juror ultimately can be fair and impartial and follow the instructions as given. *Patton*, 467 U.S. at 1039. The court acted within its discretion by determining that Juror 48 had a proper understanding or "apprehension of duty." *Skilling*, 561 U.S. at 386; *see also Purcell*, 199 Ariz. at 323, ¶¶ 12–13 (court did not err by refusing to strike a juror who initially expressed the belief that personal experiences might affect her, but later indicated she could be fair and impartial). Juror 48's statements and acknowledgments, when read together, do not reveal "an inability to serve as a fair and impartial juror." *Lavers*, 168 Ariz. at 391. Thus, because Cisneros has not carried his burden of showing that Juror 48 could not be fair and impartial, he has not

established that the court abused its discretion by denying the motion to strike Juror 48 for cause.[1]

## CONCLUSION

¶15      For the foregoing reasons, we affirm Cisneros's convictions and sentences.

C A M P B E L L, J., Concurring in the Judgment:

¶16      Under the "cure or waive" rule adopted in *State v. Rubio*, 219 Ariz. 177, 181, ¶ 12 (App. 2008), Cisneros has waived review of his claim of error because he failed to use his peremptory challenge on Juror 48. While unfair or biased jurors should be removed for cause, when an error occurs, "the defendant should peremptorily strike a truly biased or unqualified juror before peremptorily striking a juror for a lesser reason not affecting his right to a fair and impartial trial." *Id.* Failure to do so waives the issue on appeal. *Id.* Here, although Cisneros had six peremptory strikes, he failed to use one to remove Juror 48. He used all his available strikes to remove jurors he had not challenged for cause. Accordingly, Cisneros waived this issue by failing to use a peremptory strike to remove the biased juror.

¶17      I note that the "cure or waive" rule in conjunction with other Arizona caselaw gives defendants a small window to challenge the presence of a biased juror. Indeed, under *State v. Hickman*, 205 Ariz. 192, 198, ¶ 28 (2003), our supreme court concluded that the curative use of a peremptory strike was subject to harmless error review. Read together, *Hickman* and *Rubio* leave no avenue for a defendant to appeal the superior court's denial of a request to strike a biased juror for cause: *Hickman* bars relief when the defense uses a peremptory strike; *Rubio* bars relief when the defense fails to do so. Even though an appeal is not available when the court fails to strike a biased juror for cause, an avenue for correction does exist—the peremptory strike itself. Indeed, peremptory challenges exist to ensure the selection of an unbiased jury. *Georgia v. McCollum*, 505 U.S. 42, 57 (1992);

---

[1]      Because we conclude the court did not err by failing to strike Juror 48 for cause, we decline to address whether Cisneros's failure to use a peremptory strike to remove Juror 48 waived any claim of error under the "cure or waive" rule announced in *State v. Rubio*, 219 Ariz. 177, 181, ¶ 12 (App. 2008), or whether it would be structural error to allow a biased juror to serve.

*Rubio*, 219 Ariz. at 180, ¶ 9. Cisneros had the opportunity to cure the superior court's error with a mechanism designed for this very purpose. By failing to do so, he has waived any error on appeal.

**¶18** Cisneros argues that the presence of Juror 48 constituted structural error. I disagree. "Unlike trial errors, structural errors deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair." *State v. Ring*, 204 Ariz. 534, 552, ¶ 45 (2003) (quotations and citations omitted). Arizona law provides a structural safeguard for a defendant to cure error when he believes that a juror should have been stricken for cause—use of a peremptory strike. Failure to use a strike in this fashion waives the issue on appeal and may allow a biased juror to sit on a jury panel. Arizona law already permits this in certain circumstances. *See, e.g.*, *State v. Bravo*, 131 Ariz. 168, 171 (App. 1981) ("[E]ven though the answers of a venireman demonstrate that he cannot be fair and impartial, the challenge may be waived."). Moreover, Juror 48 was properly instructed on Cisneros' right to remain silent and that as a defendant, he need not present any evidence. We presume that jurors follow instructions given by the court. *State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006). Therefore, I would not hold that the superior court's error was structural.

**¶19** This analysis could evolve should a situation arise where a defendant lacked sufficient peremptory strikes to secure a fair and impartial jury. *See, e.g.*, *State v. Acuna Valenzuela*, 245 Ariz. 197, 209, ¶ 23 (2018). But here, no structural error exists. Cisneros was granted the basic protections required for his trial to serve as a vehicle for determination of guilt or innocence, including sufficient peremptory strikes to ensure a fair and impartial jury.



AMY M. WOOD • Clerk of the Court
FILED: AA